WILLIAM GOROWITZ, Plaintiff, *v.* JOSEPH J. BLUMENSTEIN, Defendant.

Supreme Court, Trial Term, New York County, December 13, 1944.

*Jerome M. Schwartz* and *William Rosmarin* for plaintiff.

*Arthur B. Colwin* for defendant.

SHIENTAG, J.  The plaintiff, on April 28, 1933, loaned the sum of $7,500 to the defendant, upon the execution by him of a promissory note in that sum, payable one year from date.  This note was delivered simultaneously with and subject to an agreement of the same date which defined the rights and obligations of the parties thereto.  On his part, plaintiff covenanted to extend the note " for a further date, giving the party of the first part [defendant] an opportunity to pay the said obligation " in the event it was not paid on its due date, and further agreed that he would not " unreasonably and unfairly demand the payment of the said obligation."  Defendant undertook to perform certain covenants contained in the agreement which are not here pertinent.

On May 3, 1933, plaintiff advanced an additional sum of $3,000 to the defendant and this was evidenced by a promissory note payable on demand.  On November 6, 1936 — the defendant in the meantime not having made any payment on either of the two promissory notes — the parties entered into another agreement in writing.  This acknowledged the indebtedness owing by the defendant to the plaintiff in the sum of $10,500, which sum the defendant was at that time " still unable in any way to liquidate " but was " desirous of in some way protecting the interests " of the plaintiff.

In order to carry into effect this intention, defendant agreed to assign and turn over to the plaintiff all his right, title and interest in and to policies of insurance mentioned in the agreement in the face amount of $75,000 " as collateral security for the obligation " and to direct the insurance companies to pay the obligation or any balance due thereon upon the death of the insured (defendant).  The agreement further provided: " The party of the first part [the defendant herein] does hereby waive any restriction as to the date of the payment of said note " and " does hereby further expressly waive the statute

of limitations in the event that the party of the first part is unable to meet, amortize or pay in full the obligation within six years from the date of said note; any provision in law to the contrary notwithstanding." (The note referred to in the agreement combined the two earlier notes and was in the sum of $9,375, the defendant having been given a certain credit of $1,125 against the original amounts due).

Between 1936, when the second agreement was executed, and April 17, 1944, when the present action was commenced, the defendant made, according to the plaintiff, three small payments on account of the obligation, namely, $25 in April, 1938, $25 in January, 1939, and $10 early in October, 1940. The defendant denies that he made these payments on account and pleads as a defense the Statute of Limitations. The plaintiff counters with the claim of waiver of that statute. The question thus presented for disposition is whether or not the express waiver of the Statute of Limitations, incorporated in the agreement in writing, is invalid as contrary to public policy.

The expressed intention of the parties is clear. They both realized that defendant would not be able to meet his obligation on the due date. This was understood when the original loan was made in 1933; it was emphasized in 1936. Nevertheless, neither wanted to be left at the mercy of the other. There thus evolved a scheme of mutual protection. The plaintiff, on the one hand, was required to be indulgent; he was not to insist on payment on the due date and was not permitted to be unreasonable or unfair in his demand. The defendant, on the other hand, in consideration of the protection thus conferred on him, agreed that he would assign to the plaintiff, certain insurance policies as security for the loan in the event it was not paid prior to the defendant's death, and, as an additional safeguard to the plaintiff, defendant agreed to waive the provisions of the Statute of Limitations in the event the note executed in 1936 was not paid within six years from its date.

The Statute of Limitations has frequently been referred to as a statute of repose — one designed to set at rest, at a definite period, the right to proceed with a cause of action. It has been deemed desirable from the standpoint of both the public and the individual that claims be litigated while witnesses and records are available and that there be eliminated the opportunity to effect the frauds and perjuries which lapse of time may invite. The public benefit is derived from the fact that litigation is ended and the number of cases before the courts is decreased. The individual is benefited by a feeling

of security; for he knows that stale claims will be outlawed and that an opponent will not be permitted to delay action until a time when the defendant is rendered helpless under the handicaps of timeworn memories, paucity of witnesses and ignorance of defenses that might have existed. (See 30 Col. L. Rev. 383; 14 Calif. L. Rev. 126.)

If, then, the Statute of Limitations is deemed salutary legislation, is a waiver of that statute by an agreement not to plead it contrary to sound public policy? Promises not to plead the statute, indefinite as to time, may be divided into three groups: (1) those made subsequent to the accrual of the cause of action but before the statute has run; (2) those made after the statute has run; and (3) those made at the inception of the obligation. We are here concerned only with the first group.

While there is a sharp conflict in the decisions, the weight of authority sustains the proposition that an agreement in writing to waive the provisions of the Statute of Limitations, based upon a good consideration and executed after the accrual of the cause of action and before the statute has run, will be enforced. (*Warren* v. *Walker,* 23 Me. 453; *Howard* v. *W. J. & S. R. R. Co.,* 104 N. J. Eq. 201; *Brownrigg* v. *deFrees,* 196 Cal. 534; *Bridges* v. *Stephens,* 132 Mo. 524; *Parchen* v. *Chessman,* 49 Mont. 326; *Quick* v. *Corlies,* 39 N. J. L. 11; *McIntosh, Appellant,* v. *Condron,* 20 Pa. Superior Ct. 118; *Jordan* v. *Jordan,* 85 Tenn. 561; *Savings Bank* v. *International Co. et al.,* 78 Vt. 169. Contra, *First National Bank* v. *Mock,* 70 Col. 517; *Hodgdon* v. *Chase,* 32 Me. 169; *Moore* v. *Taylor,* 2 Tenn. Ch. App. 556; *Nunn* v. *Edmiston,* 9 Tex. Civ. App. 562, where the waiver is for an indefinite period. See, also, 1 Wood on Limitations [4th ed.], §§ 53d, 53e, 76.) There are some cases which sustain a contract providing for a waiver for a definite period of time. (*First National Bank* v. *Mock, supra; Bridges* v. *Stephens, supra.*) There are still other cases which deny the validity of the contract even if the waiver is for a definite period. (*Wright* v. *Gardner,* 98 Ky. 454; *Moxley* v. *Ragan, &c.,* 73 Ky. 156.)

While the Court of Appeals has not squarely passed upon this question, the present law of this State appears to be in accord with the prevailing view. (*Watertown National Bank* v. *Bagley,* 134 App. Div. 831; *Andrews* v. *Cosmopolitan Bank,* 183 App. Div. 787; *Crocker* v. *Ireland,* 235 App. Div. 760, 761.) In the last-mentioned case the court, while sustaining the plea of the statute in the face of a claimed waiver, did so only on the ground "That the language of the alleged waiver is not sufficiently clear to warrant a construction that it comprehended

waiver of the Statute of Limitations." The case of *Matter of Gould* (257 App. Div. 109, revd. 282 N. Y. 132, 138) solely because of the court's finding that " The record completely refutes the contentions of claimant [with respect to waiver]. There is no evidence to support them."

In our case the agreement of 1936 was executed by the parties three years after the loan transaction and two years after the due date of the original loan. The agreement constitutes not only an acknowledgment of the debt, but an express promise to pay, and is based on a valid consideration. The language relating to the waiver is susceptible of no doubt. These considerations satisfy the strictest requirements of the cases.

Agreements not to plead the statute, when made at the inception of the obligation, have been held invalid primarily because a debtor is considered to be under a certain amount of moral duress and a creditor will, if he can, demand a waiver. This reason, however, loses some of its force when we deal with an agreement to waive, not entered into at the inception of the obligation, but several years later, and which is part of a scheme of mutual benefit to the parties involved.

In *Andrews* v. *Cosmopolitan* (183 App. Div. 787, 794, *supra*) plaintiff sued in 1917 to recover a loan made in August, 1906. After the statutory period had run, in September, 1912, a resolution was adopted by the defendant waiving the Statute of Limitations. The waiver was not for any definite period of time. The Statute of Limitations was pleaded as a defense. The court disposed of the defense by saying, " The defense of the Statute of Limitations interposed by defendant bank * * * is fully met by the resolution adopted by the directors at the meeting of September 19, 1912, in effect waiving such defense."

In *Watertown National Bank* v. *Bagley* (134 App. Div. 831, 836, *supra*) the court had under consideration a factual situation almost identical with the one at bar. There the Statute of Limitations originally expired on October 16, 1901. Before that date an agreement was entered into in writing waiving the statute, but here too it did not extend the statutory period for a definite time. The action was begun in 1908. The court, in construing the agreement which waived " any defense by way of the Statute of Limitations ". said: " A waiver of the Statute of Limitations cannot be held invalid upon the hypothesis that the protection of poor people requires such a holding. The essence of a statute limiting the time for the commencement of an action is that there should be a restriction upon the time when a cause of action may be asserted. The period

is fixed arbitrarily by the *Legislature*. The parties may extend or shorten the period if the contract is founded upon a good consideration and is reasonable." (See, also, *Speciale* v. *Sciascia*, 263 App. Div. 901.)

*Shapley* v. *Abbott* (42 N. Y. 443) is not a holding to the contrary. There the note was dated February 17, 1853. The statute expired in 1859. Prior thereto, and in 1858, there was an oral agreement testified to by plaintiff which purported to waive the provisions of the Statute of Limitations. The action was begun in 1869. The Court of Appeals, in denying relief to the plaintiff, said (p. 447): " Hence, if the plaintiff relied upon what the defendant said in September, 1858, as an acknowledgment to take the note out of the statute, he would fail simply because it was not in writing. If he relied upon what the defendant then said as an agreement not to plead the statute, he would fail, if for no other reason, because there was no consideration for the agreement."

Here the agreement is a written one, deliberately entered into under the guidance of counsel, executed under seal, and amply supported by consideration.

It is true that the Court of Appeals in *Shapley* v. *Abbott* (*supra*) used language indicating that the Statute of Limitations may not be waived, but this was dictum and in effect so considered to be by the Appellate Division in *Watertown National Bank* v. *Bagley* (134 App. Div. 831, *supra*). Moreover, it referred to an agreement made at the inception of the liability. In discussing the *Shapley* case, the Appellate Division in the *Watertown National Bank* case said (p. 834): " In *Shapley* v. *Abbott*, (42 N. Y. 443), relied upon by the appellant's counsel, the waiver was by parol and without consideration, and the court held it was not sufficient. Chief Judge EARL in his opinion, in discussing the question of estoppel, did use expressions which, separated from the facts, are favorable to the contention of the appellant, and some of the textbooks so hold. Probably an agreement made at the inception of the liability to the effect that the Statute of Limitations will never be interposed as a defense would be flying in the face of the statute." See, also, *Crocker* v. *Ireland* (235 App. Div. 760–761, *supra*), where the court pointed out that the Court of Appeals in the *Shapley* case referred to waivers made at the inception of the obligation. Here, however, the agreement was made long after the inception of the obligation, and at a time when the defendant was unable to pay his debt and desired further indulgence on the part of the creditor.

But there is a second ground on which the plaintiff should prevail here, and upon that ground I prefer to base my decision. Even if it be held that an express written waiver, based upon consideration and made after the inception of a debt and before the statute has run, will not be sustained for an indefinite period, there is no reason in law or in morals why the waiver should not be held good for a reasonable time after the statutory period would otherwise have expired. Within the framework of judicial precedent, the law may and it should, in such circumstances, invoke the doctrine of estoppel, and compel the defendant to do the decent thing. The action here was commenced two years after the claim would ordinarily have been outlawed; that was within a reasonable time.

In view of this disposition, it is unnecessary to consider plaintiff's rather tenuous contention that defendant made certain payments in 1938, 1939 and 1940 which tolled the statute, or to analyze the suggestion that there was an extension of the time of payment and that the statute did not commence to run until the defendant was financially able to pay his debt. The pleadings will be amended to conform to the proof.

Judgment is directed in favor of the plaintiff in the sum of $9,315 with interest from April 30, 1938, and costs. Twenty days' stay and thirty days to make a case.